JOHN DAYTON

v.

DRAINAGE COMMISSIONERS.

*Filed at Springfield April 5, 1889.*

1. WATER-COURSES—*surface waters—dominant and servient heritage —rights at the common law.* The owner of a dominant estate has no right, at common law, to divert the waters of a slough therein into a channel wholly different from that in which they naturally flow.

2. The owner of a higher tract of land has the right to have the surface water falling or naturally coming upon his premises by rains or melting snow, pass off through the natural drains upon or over the lower or servient land next adjoining; and the owner of the dominant heritage has the right, by ditches and drains, to drain his own land into the channels which nature has provided, even if the quantity of water in that way thrown upon the next and adjoining lower lands is thereby increased.

3. But the owner of the higher lands has no right to open or remove natural barriers, and let on to such lower land water which would not otherwise naturally flow in that direction. That would be to subject the servient heritage to an unreasonable burden, which the law will not permit.

4. SAME—*under Drainage law of 1885—rights of dominant heritage.* Under section 42 of the Drainage act of 1885, the owner of lands outside of a drainage district may connect with ditches of the district already made, and thus drain his own lands; but by so doing he will virtually annex his lands to the district, and subject them to at least the same burdens which they would have borne if they had been originally included in the district. But he can not, under that section, divert into the district the drainage of large tracts belonging to other proprietors, who have taken no action in the matter, and whose lands are not brought into the district and made to assume any of its burdens.

5. INJUNCTIONS—*to prevent wrongful diversion of surface waters.* An injunction is the proper remedy to prevent the wrongful diversion of surface water upon the lands of another. In such case, the damages thereby occasioned are continuing or often recurring, and difficult of computation, and therefore an injunction is the only adequate remedy.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Douglas county; the Hon. C. B. SMITH, Judge, presiding.

Mr. ANTHONY THORNTON, Mr. C. W. WOOLVERTON, and Mr. W. J. AMMEN, for the appellant:

If any wrong has been done, the complainants had full and adequate remedy at law.   3 Starr & Curtis' Stat. p. 210, sec. 10; 1 High on Injunction, sec. 28; *Thornton* v. *Roll*, 118 Ill. 363; *Coughron* v. *Swift*, 18 id. 414.

Appellant had the right, under the statute, to connect his ditch with that constructed by the commissioners.  Sess. Laws 1879, p. 151, sec. 35; 1 Starr & Curtis, p. 151, sec. 133; 3 id. p. 219, sec. 42.

The evidence largely preponderates, that the acts charged would not injure the drainage district.   If no drainage district had been organized, appellant had the right to drain his land, as he has attempted.   *Peck* v. *Herrington*, 109 Ill. 612.

The alleged injury is too uncertain to justify the interposition by injunction.  The remedy sought is premature.  See 1 High on Injunctions, secs. 734, 742, 743; *Dunning* v. *City of Aurora*, 40 Ill. 486; *Lake View* v. *Letz*, 44 id. 84; *Bridge Co.* v. *Railroad Co.* 6 Paige, 563; *Kennerty* v. *Phosphate Co.* 17 S. C. 411.

Messrs. ECKHART & MOORE, for the appellees:

Appellees have authority to sue as drainage commissioners. Hurd's Stat. 1885, chap. 42, sec. 1.

A drainage district is a municipal corporation.   *Commissioners* v. *Kelsey*, 120 Ill. 482.

After the completion of the work, the commissioners shall thereafter keep the same in repair.   Hurd's Stat. 1885, chap. 42, sec. 41, p. 494.

The courts will restrain the placing of obstructions in or upon public highways, streets, bridges, grounds and navigable waters.   *Railway Co.* v. *Chicago*, 96 Ill. 627; *Watertown* v. *Cowen*, 4 Paige, 510; *Jacksonville* v. *Railway Co.* 67 Ill. 540; *Attorney General* v. *Cohoes*, 6 Paige, 135.

The remedy by injunction to prevent improper diversion of surface water, is clearly established. *Hicks* v. *Silliman*, 93 Ill. 255.

Surface water can not be changed by artificial means, and if by such means the flow is changed, an injunction will be given. *Railroad Co.* v. *Morrison*, 71 Ill. 616; *Railroad Co.* v. *Cox*, 91 id. 500; *Nevins* v. *Peoria*, 41 id. 502; *Mellor* v. *Pilgrim*, 3 Bradw. 476; *Johnson* v. *Rea*, 12 id. 335.

While the owner of lower lands shall receive all water that naturally flows from the next higher lands, the owner of the higher lands may not open or remove natural barriers, and let on such lower lands water that would not otherwise naturally flow in that direction. *Anderson* v. *Henderson*, 124 Ill. 164.

An upper proprietor is liable in damages at law, or may, in case of irreparable injury, be restrained by injunction, if he so diverts the stream as to cause the water to be discharged upon the land or into the ditches or mines of a neighbor. Gould on Waters, p. 381.

It follows from this, that where the injury may be reasonably expected to result, unless prevented, the plaintiff need not wait for damage to accrue before filing his bill. Gould on Waters, p. 701.

The allegations were, that the defendants intended, as a part of a system of water works, to increase the volume of a stream flowing through the plaintiff's lands; that the plaintiff was credibly informed, and believed, that such increase would cause the stream to overflow its banks and render his land valueless,—and these were accompanied by a statement of the facts upon which the bill was founded. It was held, that the allegations made out a sufficient case for equitable interference. Gould on Waters, p. 701.

The diversion or obstruction of a water-course has been the subject of frequent equitable interference by injunction. High on Injunctions, (2d ed.) sec. 795; Gould on Waters, 715, 733; *Laney* v. *Jasper*, 39 Ill. 46.

18—128 ILL.

The injury complained of is such, that from its continuance the mischief is permanent, constantly recurring, and can not otherwise be prevented than by injunction. 2 Story's Eq. Jur. secs. 925-927; 2 Hilliard on Torts, 94, note a; Angell on Water-courses, p. 20, sec. 4; *Lyon* v. *McLaughlin,* 32 Vt. 423.

The statutory right of individual land owners to make connection with ditches of a district has no application in this case.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by the Drainage Commissioners of Drainage District number 2, in the town of Newman, Douglas county, against John Dayton, to restrain the defendant from digging a certain ditch on his land and connecting it with one of the ditches in said drainage district. Said district was organized under the Drainage Act of 1879, embracing a territory of 4300 acres of land, and has constructed a main ditch and various lateral ditches, one of the latter being known as branch ditch number 3. The defendant is the owner of some 400 acres of land, of which an eighty acre tract, viz., the west half of the south-west quarter of section 17, township 16, north, of range 14, west of the second principal meridian, is included in and lies on the easterly border of the district, and is crossed in a northerly and southerly direction by said branch ditch number 3. The residue of the defendant's land not included in the district also lies in said section 17, and adjoins the tract above described on the east. The lands lying east of the district constitute, as is alleged, another water-shed drained by a water-course known as Bolinger's Slough, which takes its rise in section 4, about two miles north-east of the site of the defendant's proposed ditch, and runs thence in a south-westerly direction to and across the east half of the south-west quarter of section 17, which is a part of the defendant's land, and thence for several

miles in a southerly direction to Bushy Fork Creek. Certain ditches and tile-drains have been constructed so as to drain portions of the land north into the slough, and so that the slough, as is alleged, drains about 1600 acres of land before it enters the lands of the defendant.

The bill alleges that the defendant, without authority of law, threatens and intends to construct and is constructing a ditch on the east half of the south-west quarter of said section 17 so as to connect said slough with said branch ditch number 3, and intends thereby to give an outlet to the waters from said large body of lands adjoining said district into said branch ditch; that neither said branch ditch nor the main ditch of the district is of sufficient capacity to carry off the increased flow of water from said lands, and that the diversion of said waters from their natural course into said branch ditch will cause irreparable injury to the lands in said district lying along said branch and main ditch.

The defendant answered denying each of the several allegations of the bill, and the cause being heard on pleadings and proofs, a decree was entered finding the allegations of the bill to be true, and perpetually enjoining the defendant from digging or making the ditch connecting said slough with said branch ditch and thereby giving said slough an outlet into said branch ditch, but ordering that the defendant should not be restrained from draining his own land into said drainage district. This decree was affirmed by the Appellate Court on appeal, and by a further appeal the record is brought to this court.

Whether said slough is such a channel or water-course as is alleged in the bill is a question of fact upon which the evidence is conflicting. The testimony on behalf of the complainants tends to show that the natural drainage from a large territory lying north of the defendant's lands is into said slough, and that drains and ditches have already been constructed by which a large portion of that territory is being

drained through that channel, and that the construction by
the defendant of his proposed ditch would divert the drainage
of all that area from its natural course into the ditches be-
longing to said district, and also that the capacity of said
ditches is insufficient to carry off such additional flow of
water.     The defendant, on the other hand, gave evidence
tending to show that the natural drainage from the lands in
question is towards the south-west and over the lands included
in the drainage district; that the ditches in said district are
amply sufficient to carry off all the water which would be
brought to them by means of the ditch the defendant proposes
to construct, and that such additional flow of water, instead
of being a detriment, would be a positive benefit to the com-
plainants' drainage system.     The finding of the Circuit Court
upon these contested questions of fact is in favor of the com-
plainants, and upon consideration of all the evidence we are
unable to say that such finding is not fully warranted.

Assuming the facts to be correctly decided, the decree re-
straining the defendant from diverting the waters of Bolinger
slough into the ditches of the drainage district would seem to
follow as a necessary result.     The defendant has no right at
common law, as the owner of the dominant estate, to divert
the waters of the slough into a channel wholly different from
that in which they would naturally run.     The rule undoubt-
edly is, that the owner of a higher tract of land has the right
to have the surface water falling or naturally coming upon
his premises by rains or melting snow pass off through the
natural drains upon or over the lower or servient lands next
adjoining, and the owner of the dominant heritage has the
right, by ditches and drains, to drain his own land into the
channels which nature has provided, even if the quantity of
water in that way thrown upon the next adjoining lower lands
is thereby increased.     But the owner of the higher lands has
no right to open or remove natural barriers and let on to such
lower lands water which would not otherwise naturally flow in

that direction. That would be to subject the servient heritage to an unreasonable burden which the law will not permit, and against which the owner ought reasonably to have protection. *Anderson* v. *Henderson*, 124 Ill. 164.

But the defendant claims the right to construct said ditch by virtue of section 42 of the Drainage Act of 1885. That section provides that the owners of land outside of a drainage district may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district; or if such connection, by increase of water, requires an enlargement of the district ditches, then the outside owners of the land so connecting are required to pay the cost of such enlargement. And it is further provided that, if individual land owners outside of the district shall so connect, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by drainage shall be treated, classified and taxed like other lands within the district. Laws of 1885, page 91.

Doubtless, under these provisions, the defendant has the right to connect ditches draining his own lands with the district ditches, but by so doing he will virtually annex his lands to the district, and subject them to at least the same burdens which they would have borne if they had been originally included in the district. This right however was fully recognized and protected by the decree, the injunction being so modified as to permit the defendant to drain his own lands into the drainage district.

But the ditch the defendant is endeavoring to construct involves much more than the drainage of his own lands. Its effect will be to divert into the district ditches the drainage of large tracts of land belonging to other proprietors. But it will not bring those lands within the jurisdiction of the district or subject them to any of its burdens. That the defendant has no power to do, and as the owners of these lands are tak-

ing no steps in the premises, they are not brought within the provisions of section 42 of the Drainage Act and can not thereby be included in the district. The construction of the defendant's proposed ditch therefore would give to large tracts of outlying lands all the benefits of the drainage system provided by the district without subjecting them to any of its burdens. It is very clear that such results are not within the contemplation of said section 42. Under that section the defendant has a right to drain his own lands into the district ditches, but he has no right to construct a ditch which will only serve as a channel through which to convey to said ditches the drainage of lands not included in the district and belonging to other proprietors.

It is insisted with much earnestness that the complainants had an adequate and complete remedy at law, and that a court of chancery therefore should not have assumed jurisdiction. That an injunction is the proper remedy to prevent the wrongful diversion of surface water is clearly established. *Hicks* v. *Siliman*, 93 Ill. 255; Gould on Waters, 715. The evidence clearly shows that the proposed diversion of surface water was wrongful, and that the damages which would be occasioned thereby would be continuing or often recurring and difficult of computation, and an injunction therefore was the only adequate remedy.

We find no error in the decree, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*