## Arthur Lawrence v. The Broadwell Special Drainage District, No. 1.

DRAINAGE DISTRICT—*who may not connect with.* An owner of land lying outside of a drainage district is not entitled to connect with the drain of a district.

Bill for injunction. Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1; 1907.

FRANK L. TOMLINSON and BEACH, HODNETT & TRAPP, for appellant.

HUMPHREY & ANDERSON and BLINN & COVEY, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

The Broadwell Special Drainage District filed its bill in the Circuit Court of Logan county against Arthur Lawrence praying for an injunction restraining Lawrence from draining waters from land belonging to him into or upon lands lying within the boundaries of the district. Lawrence filed an answer to the bill of complaint, the cause was referred to the master in chancery, who took the evidence in the cause and reported the same to the court. The court heard the case upon the evidence so reported, and rendered a decree in favor of the drainage district, ordered Lawrence to disconnect a drain he had theretofore constructed, and perpetually enjoined him from running any water from the premises in question upon the lands of the drainage district. From this decree Lawrence has taken an appeal.

It appears from the evidence that the drainage district was organized in 1884; that the territory of the drainage district lies to the north and east of the land in dispute and includes lands of the appellant, which lie immediately north of and adjoin such disputed tract, which is the south half of the southeast quarter of section two, township eighteen, range three; that the drainage district established a system of drainage the main tile or ditch of which runs from a point about one and one-half miles east of appellant's land, in a general northwesterly direction, and that such ditch or tile is in what was the bed or depression of a natural waterway or slough. It also appears from the evidence that there is another bed or depression called the Lawrence slough lying on the south of the one

592 APPELLATE COURTS OF ILLINOIS.

VOL. 134.] Lawrence v. Broadwell. Special Drain. Dist.

already described, which runs nearly parallel with it, the general fall of which is from the southeast to the northwest, the same as that in the organized district. The Lawrence slough, so lying to the south of the drainage district, crosses the disputed eighty-acre tract and in a state of nature would seem to have carried off toward the northwest waters coming upon that tract from quite a large area of land lying to the southeast thereof, belonging to persons other than Lawrence.

There was considerable conflict in the evidence as to the character of the Lawrence slough, *i. e.*, as to which way the water flowed in a state of nature. Some witnesses testified that the water naturally flowed from the disputed tract to the north and upon the lands of appellant which are in the drainage district, while others said the natural flow was to the northwest into a watercourse, at a bridge about a mile away.

A consideration of the whole evidence shows that while in case of a freshet or extreme high water, a part of the water may have gone to the north from the disputed tract, yet there was a general fall or descent to the northwest and that, except in cases of freshet, the water so far as it passed off at all went in that direction, and did not pass over the lands of appellant into the slough or swale embraced in the drainage district. The levels as given by the surveyors seem to support the theory that there was a general fall to the northwest and that from the east line of the eighty-acre tract in dispute to the west line along the north side thereof there was a very appreciable fall to the west. It furthermore appears from the evidence that in the year 1874, when the lands in the vicinity of the disputed tract were in a state of nature that the owners thereof dug a ditch beginning some distance southeast of the disputed tract, running thence northwesterly to about the northeast corner of said tract and thence westerly and northwesterly to the bridge hereto-

.fore spoken of. When dug the earth was thrown out to the north and formed what some of the witnesses called a dyke about two and one-half feet above the surface. This ditch has been maintained ever since as a watercourse, *i. e.,* for a period of over thirty years prior to the time this proceeding was instituted.

It would seem that the construction of such ditch and its maintenance for such a length of time would be very suggestive, if not conclusive, evidence that the drainage of the lands lying in the Lawrence slough was towards the bridge rather than to the north and into the ditch of appellee, as now claimed by appellant.

It also appears from the evidence that the Lawrence slough was quite low and marshy, was from 200 to 300 (yards) wide, had its head over a mile in a south-easterly direction from the disputed tract, that in a state of nature and its condition as improved by the digging of the ditch in 1874, the waters of said slough, whether confined in said ditch or whether allowed to spread out in a course of nature, drained from the premises other than those of appellant upon and over the disputed tract.

The evidence further shows that some time in the year 1904, appellant laid about 1,000 feet of tile in the disputed tract and south of the said ditch and dyke described, and from it laid a tile to the north *under the ditch and dyke* to connect said disputed tract with the drain of appellee and by that means carried the water which fell on said south eighty, or came thereon, from the lands of his neighbors southeast thereof, into the drain of appellee. This tile the court ordered disconnected, and restrained appellant from maintaining the same at a distance of less than one hundred feet to the north of said ditch and dyke.

The court in its decree upon such evidence found that large quantities of water, not falling upon the disputed tract and which did not fall upon any land of appellant, were unlawfully diverted from their

594    APPELLATE COURTS OF ILLINOIS.

VOL. 134.]    Lawrence v. Broadwell Special Drain. Dist.

proper course in said Lawrence slough and in said open ditch into said tile drain so laid by appellant and by that means into the ditch or drain of appellee.

This finding of the court would seem to have been warranted by the evidence. The tile as laid below the bed of the old ditch could not have failed, as testified to by several witnesses, to take a very large portion, if not all, of the water in said Lawrence slough ditch into the drain of appellee. It would also tend to drain a large territory south of said ditch in the slough. In either event it would drain or carry off the waters falling upon the lands of others beside appellant, into the drain of appellee.

Appellant contends that under section 42 of the Drainage Act of 1885, which provides that owners of land outside the drainage district may connect with the ditches of the district already made by payment, etc., and that if individual landowners outside of the district shall so connect they shall be deemed to have voluntarily applied to be included in the district, he had a right to connect his disputed eighty acres by means of the tile employed. Such section however does not permit an owner of an outside tract to connect with the drain of a district already made, where, as in this case, it diverts into the district, drainage of lands belonging to others, who have taken no action in the matter and are not made to assume any of the burdens of the district. Dayton v. Drainage Commissioners, 128 Ill. 271. The construction of said section 42 announced in the Dayton case is not modified in the case of The People v. Drainage District, 191 Ill. 623, cited by appellant. The latter case deals merely with the right or power of the commissioners to declare that landowners have elected to join a district; the holding being that an owner must himself do some act by which it can be said that he has voluntarily connected his land with the district.

Appellant also contends that the court was in error in restraining him from laying his tile within one hun-

dred feet from the north of said old ditch and argues that the effect of such order was to deprive him of the benefits of the Drainage Act. We do not think, however, that the action of the court was erroneous in this respect.

There was evidence which fairly showed that the tile of the size used by appellant and laid as this tile was laid, would drain lands of the character of those involved for fully one hundred feet from the tile itself. There is no exact basis for such a determination, it must largely depend upon estimates to be given by men experienced in that line of work. From all the facts and circumstances before the court and in view of the fact that it was right to restrain appellant from so laying his tile that he would drain the waters from the ditch and from the lands south of it into the drain of appellee, we do not think the court's action in this regard was unwarranted.

Appellant has discussed other matters in his brief, but we do not care to extend this opinion by reviewing them, as the decree seems right and to have been fully sustained by the evidence.

The decree is affirmed.

*Affirmed.*